[No. 32137-4-I.   Division One.   April 11, 1994.]

DAVID L. THORSTAD, ET AL, *Appellants*, v. FEDERAL WAY WATER AND SEWER DISTRICT, ET AL, *Respondents*.

*Laird A. Pisto* and *Charles J. Herrmann & Associates,* for appellants.

*Edward W. Kuhrau, Charles C. Gordon, Thomas A. Barkewitz,* and *Perkins Coie,* for respondents.

BAKER, J. — David Thorstad and Terel Keifer purchased property from the Federal Way Water and Sewer District (District) and sought declaratory judgment that the property was buildable. The trial court found that by participating and cooperating with the developer who had recorded restrictive covenants against surrounding property while it was being platted, the District had subjected the parcel to the covenants which prohibit construction on tract A. The trial court granted declaratory relief to Defendant homeowners who oppose construction of a residence on the parcel. We affirm in part and reverse in part, holding that only the portion of the property

transferred to the District after the covenants were recorded is subject to the covenants.

## I

The parcel of land, tract A in the Marine Hills West plat, had been partially owned by the District for many years before the plat was developed. A water storage tank was formerly located on the parcel. When the developer wanted to plat the surrounding property, the District cooperated by exchanging property to reconfigure boundaries. The total amount of property owned by the District did not ultimately change but the shape of the property did. After the plat was developed and sold, the water tank was removed and the land was auctioned.

The parties agree on the chronology of events:

1940: A predecessor water district condemned a parcel of land which included part of what became tract A, presumably to allow construction of a water tank on the site.

1968: The District took title by warranty deed to additional property in what became the plat of Marine Hills West. The deed indicated that this additional property included part of what became tract A and also other adjoining property.

1974: The chairman of the District signed the Marine Hills West plat dedication. There were restrictions on the face of the plat.

January 1975: The District executed an agreement with Herbert E. Mull, Inc., the developer of the surrounding land. The District and Mull agreed to exchange property in order to facilitate platting of Mull's property adjacent to the tank and to enhance the aesthetics of both properties. The exact description and location of the properties would be determined later.

July 1975: The plat was recorded.

December 1975: Restrictive covenants pertaining to Marine Hills West were recorded.

January 1976: Mull quitclaimed tract A, the parcel on which the water tank sat, to the District as contemplated by

the 1975 agreement. The quitclaim deed described the new boundaries of tract A.

1989: The water tank was removed.

November 1991: The District authorized the sale of tract A as surplus land.

March 1992: David Thorstad and Terel Keifer[1] purchased tract A.

April 1992: Thorstad filed for declaratory judgment against the City of Federal Way, the District, and a number of named individual Defendants who are lot owners in Marine Hills West (homeowners).

At trial, the homeowners were the only remaining Defendants. The parties stipulated that the District acquired one-third of tract A by the 1976 quitclaim deed and two-thirds by the 1968 statutory warranty deed.

The trial court found that (1) Mull and the District had changed the water tank site boundaries for their mutual benefit, (2) the District had executed the Marine Hills West plat as an owner of a portion of the land being platted, (3) Mull and the District had intended that homes be built only on the numbered lots and not on the lettered tracts, (4) Mull executed and recorded restrictive covenants that limited construction of any building or structure to the numbered lots in the plat, but that the District did not execute the covenants, (5) by quitclaim deed Mull then conveyed tract A to the District, and (6) the bidding documents for tract A issued by the District included a title report which listed the recorded covenants as well as the restrictions contained on the face of the plat.

From these findings, the trial court concluded: (1) the District had authority to place restrictions on its property, (2) the District received adequate consideration for its decision to participate in the platting and the property exchange with Mull, and (3) the District's participation in the platting process and subsequent acceptance of the quitclaim deed from Mull after the recording of the covenants

---

[1]Plaintiffs David Thorstad and Terel Keifer are collectively referred to as Thorstad.

resulted in the District binding itself and all of tract A to the covenants.

## II

■ We first determine whether the one-third of tract A quitclaimed to the District was subject to any encumbrances. By definition, quitclaim deeds convey only the grantor's interest subject to valid encumbrances, so that the grantee is in the same position as the grantor. *Corning v. Aldo*, 185 Wash. 570, 577, 55 P.2d 1093 (1936). At the time Mull quitclaimed to the District, recorded encumbrances on tract A included the restrictions on the face of the plat and the covenants.

The restrictions on the face of the plat are not relevant. They prohibit subdividing lots within the plat to create parcels smaller than required by applicable zoning regulations but do not address internal building restrictions.

The covenants which Mull had recorded almost 2 months before giving the quitclaim deed to the District provide, in relevant part, "Additionally, each building site shall consist of at least: One such residence lot or more as shown on said plat[.]" The parties agree that these covenants were properly recorded pursuant to RCW 65.08.030, but dispute the effect of the recording. The homeowners argue that recording the covenants and then granting a quitclaim was sufficient to encumber tract A and make the covenants enforceable between Mull and the District. The homeowners also argue that, because the covenants were recorded, the District had constructive notice of the encumbrances at the time it accepted the quitclaim and thus took tract A subject to the covenants. *Murphy v. Seattle*, 32 Wn. App. 386, 392, 647 P.2d 540 (1982). Thorstad contends that valid covenants must be made between at least two parties because one cannot covenant with oneself. Thus, recordation of covenants alone is insufficient to bind a subsequent grantee of the land if that grantee has not specifically been made a party to the covenants, either in the deed or otherwise. Because the District did not execute the covenants and because the deed

did not refer to the covenants, Thorstad argues that the quitclaim deed transferred the property free of the covenants.

■ We hold that because the covenants were properly recorded by Mull before he quitclaimed part of the property to the District, the deeded property was subject to the recorded covenants. By transferring a portion of the property against which the restrictive covenants had been recorded, Mull severed the title and made the covenants binding on both the transferred and retained portions of the plat.[2]

### III

Having determined that one-third of tract A is burdened by the recorded covenants, we next consider whether the remaining two-thirds, which belonged to the District before platting, is subject to the covenants.

■ To determine contracting parties' intent, a court may consider extrinsic evidence, such as circumstances leading to execution of the agreement and conduct after execution of the agreement, to declare the meaning of what was written. *Berg v. Hudesman*, 115 Wn.2d 657, 667-69, 801 P.2d 222 (1990). Here, Mull testified he did not intend that houses be built on the lettered tracts. Also, evidence demonstrated that the District signed the plat declaration, participated in the platting process, agreed to reconfigure boundary lines, and accepted the quitclaim after the recordation of the restrictive covenants. The trial court concluded from this evidence that the District intended to subject the two-thirds of tract A that it owned before platting to the recorded covenants.

We disagree with the trial court's legal conclusion that the District agreed to bind all of tract A to the recorded covenants. There is no evidence that the recorded covenants were contemplated by the parties at the time of the execution of the January 1975 contract. The contract does not mention covenants, and there is no evidence that the parties discussed any future covenants or that the District granted Mull the authority to bind it to future covenants. The covenants were

---

[2]Homeowners contend that Thorstad's position on this issue on appeal is inconsistent with his position at trial. We have reviewed the trial court record and transcripts and find this argument meritless.

not recorded until 11 months after the execution of the contract and the District did not execute them.[3] We thus conclude that the two-thirds of tract A which had been previously owned by the District is not subject to the recorded covenants.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

GROSSE and KENNEDY, JJ., concur.

---

[3]It is certainly possible for a party who does not execute covenants to be bound by them — for example, one who buys property with previously recorded covenants. The District's nonparticipation in the recording of these covenants is significant because it was a property owner in the plat at the time the covenants were recorded.